NUMBER 13-01-493-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 



 

THE STATE OF TEXAS,                                                         Appellant,

 

                                                   v.

 

KENNETH L. WILLIAMS,                                                         Appellee.

 



 

                        On appeal from the 156th District Court

                                    of Bee County, Texas.

 



 

                                   O P I N I O N

 

        Before Chief Justice Valdez
and Justices Dorsey and Rodriguez

                                  Opinion by
Justice Dorsey

 








While incarcerated at the McConnell Unit of the Texas
Department of Criminal Justice (TDCJ), Kenneth L. Williams was indicted on
three counts of assault on a public servant. 
Afterwards, he filed a motion to dismiss the indictment, asserting
preindictment delay and violation of his right to speedy trial.  After a hearing, the trial court dismissed
the case based upon preindictment delay, but denied relief based upon violation
of speedy trial.  By a single issue, the
State argues that the trial court erred in dismissing the case based upon
preindictment delay.  Williams brings a
point of error complaining that the trial court erred in failing to dismiss the
case based upon violation of speedy trial. 
We affirm in part and reverse and remand for trial.

                                                  I. Jurisdiction

Before addressing the merits of this appeal, we discuss Williams=s challenges to
our jurisdiction.  He first complains we
lack jurisdiction because the State filed the notice of appeal in the wrong
cause number.  See Steinecke v. State,
81 S.W.3d 467, 467 (Tex. App.BHouston [1st
Dist.] 2002, no pet.) (notice of appeal filed in wrong
cause number does not confer appellate jurisdiction).  Williams was indicted in Cause No.
B-00-M019-3-PR-B, and the dismissal order from which the State appeals bears the same cause number.  The trial court entered the dismissal on July
5, 2001.  Eleven days later, the State
filed the notice of appeal bearing the same cause number as the dismissal.  The notice of appeal was filed in the correct
cause number and was timely filed within fifteen days of the date the trial
court entered the dismissal.  See Tex. Code Crim. Proc. Ann. art. 44.01(d) (appeal must
be filed within fifteen days after the date on which the order, ruling, or
sentence to be appealed is "entered by the court."); see also Tex. R. App. P. 26.2(b).








Williams complains the notice of appeal in the body of the
notice gives the wrong cause number of the dismissal being appealed.  Rule 25.2(b)(2) of
the Texas Rules of Appellate Procedure provides that a notice of appeal is
"sufficient" if it shows the party's desire to appeal "and, if
the State is the appellant, the notice complies with Code of Criminal Procedure
article 44.01."  Tex. R. App. P. 25.2(b)(2); State v. Riewe, 13 S.W.3d 408, 411 (Tex. Crim.
App. 2000).  Here, the notice of appeal
states:  Awithin the 15 days of Granting
the Dismissal on the above mentioned cause, the State files this Notice of
Appeal to the 13th Court of Appeals of the Dismissal on June 5, 2001 [sic] in
Cause Number B-98-M012-0-PR-B. . . .@  The stated cause number is not the same as that
shown on the dismissal being appealed. 
This error, however, does not defeat our jurisdiction.  The notice of appeal declares the State is
appealing from Athe above
mentioned cause.@  We read the notice of appeal as containing a
clerical error that does not defeat our jurisdiction.  Article 44.01 of the Texas Code of Criminal
Procedure does not require the State=s notice of
appeal to give the cause number of the dismissal being appealed.  See Tex.
Code Crim. Proc. Ann. art.
44.01 (Vernon Supp. 2002).  It is apparent from the record that the State
filed the notice of appeal in the cause number stated on the dismissal.  The notice of appeal is sufficient because it
shows the State's desire to appeal from the dismissal, and the notice complies
with article 44.01.  See Tex. R. App. P. 25.2(b)(2); Riewe, 13 S.W.3d at 411.  We hold that we do have jurisdiction of this
appeal.








                                          II. Preindictment Delay

                                                 A.
Article 32.01

The motion to
dismiss asserted violations of both article 32.01 of the Texas Code of Criminal
Procedure and violations of the Fifth and Sixth Amendment rights to speedy
trial.  Article 32.01 allows a trial court to dismiss
an indictment that is not timely returned if the defendant is in custody or on
bail.  See Tex. Code Crim. Proc. Ann. art. 32.01.[1]  However, Williams did not file his
speedy-trial motion based upon article 32.01 until after he was indicted.  A speedy-trial motion based upon article
32.01 has no effect if it is presented after indictment.  Brooks v. State, 990 S.W.2d 278, 285
(Tex. Crim. App. 1999) (citing Tatum v. State, 550 S.W.2d 548, 550 (Tex.
Crim. App. 1974); Smith v. State, 998 S.W.2d 683, 694 (Tex. App.BCorpus Christi
1999, pet. ref=d).

                                                B. Limitation Bar








Statutes of limitation are the primary protection against
preindictment delay and the prejudice that results from the passage of
time.  Ibarra v. State, 11 S.W.3d
189, 193 (Tex. Crim. App. 1999); Moore v. State, 943 S.W.2d 127, 128
(Tex. App.BAustin 1997,
pet. ref=d).[2]  Here, the offense occurred on November 5,
1999, and Williams was indicted for it on November 7, 2000.  Thus, limitations does
not bar this prosecution.  See Tex. Penal Code Ann. ' 12.01(4) (Vernon 1977).

                          C. Fifth Amendment Right to Due Process








Though limitations is not a factor in this case, due process
requires dismissal of an indictment if the accused shows that the preindictment
delay (1) caused substantial prejudice to his right to a fair trial and (2) the
delay was an intentional device to gain tactical advantage over him.  United States v. Marion,
404 U.S. 307, 322 (1971); Ibarra, 11 S.W.3d at 193.  The Due Process Clause does not invalidate
criminal prosecutions simply because a reviewing court believes a prosecutor
should have sought an indictment earlier. 
United States v. Lovasco, 431 U.S. 783, 790
(1977).  Prosecutors are under no
duty to file charges before they are satisfied they can prove a suspect's guilt
beyond a reasonable doubt. Id. at 791.  To prosecute a defendant following delay
caused by investigation of the case by the State does not deprive a defendant
of due process, even if his defense might have been somewhat prejudiced by the
lapse of time.  Spence
v. State, 795 S.W.2d 743, 749-50 (Tex. Crim. App. 1990) (quoting Lovasco,
431 U.S. at 795-96).[3]

                                          Substantial Prejudice

At the hearing on the motion to dismiss, defense counsel argued
the preindictment delay impaired Williams=s defense
because he could not locate a witness, Jason Wimberly.  Assuming substantial prejudice, there is no
evidence that the delay was brought about by the State for the purpose of
gaining some tactical advantage over him. 
See Moore, 943 S.W.2d at 129.  Here, the State=s attorney informed the trial court that a
thorough investigation of the incident caused the State to delay the
indictment.  Specifically, he said that
there were a number of individuals involved and multiple allegations in
addition to the offense alleged in the indictment.








Accordingly, the delay falls within the ambit of delay for
investigative reasons, and, furthermore, is the same type of delay as that
which was present in Lovasco. 
Williams has failed to satisfy the second prong of the due-process
analysis.  See Marion, 404
U.S. at 322; Ibarra, 11 S.W.3d at 193; see also United States v.
Crouch, 84 F.3d 1497, 1514 (5th Cir. 1996)).  We hold that the trial court erred in
dismissing the indictment based upon preindictment delay.

                                         III. Right to Speedy Trial

Williams asserts the trial court erroneously denied relief
based upon violation of a speedy trial. 
Williams asserts that he was denied his Fifth and Sixth Amendment rights
to speedy trial due to delay after the indictment.  The proper analysis requires  four factors:  (1) length of delay; (2) reason for the
delay; (3) assertion of the right;  and
(4) prejudice to the accused.  Barker v. Wingo, 407 U.S. 514, 530-32 (1972).  When reviewing a trial court's decision to
grant or deny a speedy trial claim, we defer to the court's findings of fact
but review de novo its application of the law to those facts.  State v. Munoz, 991
S.W.2d 818, 821 (Tex. Crim. App. 1999); Johnson v. State, 954 S.W.2d
770, 771 (Tex. Crim. App. 1997).

This balancing test requires weighing case‑by‑case
the conduct of both the prosecution and the accused.  Munoz, 991 S.W.2d at
821.  No single Barker
factor is necessary or sufficient to the finding of a speedy-trial
violation.  Id.  The factors must be considered together with
other relevant circumstances.  Id.       

                                             A. Length of Delay








We must find the delay presumptively prejudicial before
analyzing the remaining Barker factors.  Barker, 407 U.S. at
530.  Presumptive prejudice does
not necessarily indicate a statistical probability of prejudice;  it simply marks the
point at which courts deem the delay unreasonable enough to trigger the Barker
inquiry.  Doggett v. United States,
505 U.S. 647, 652 n.1 (1992); Munoz, 991 S.W.2d
at 821-22.  We measure the delay from the
time the defendant is formally accused or arrested to the time of trial.  Marion, 404 U.S. at 313.  An eight-month delay is presumptively
unreasonable and prejudicial.  Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).  Here, although serving time for unrelated
crimes when this offense allegedly occurred,  Williams was arrested for this offense
on November 5, 1999 and indicted on November 7, 2000.  His first trial setting was April 23, 2001,
which was an approximate seventeen and one-half month delay between the arrest
and the trial setting.  This delay
triggers our consideration of the remaining Barker factors.  

                                             B. Reason for Delay

Under Barker, "different weights should be assigned
to different reasons" for the delay. 
Barker, 407 U.S. at 531.  A Adeliberate
attempt to delay the trial@ weighs heavily
against the State.  Id.  We consider whether the delay was due to
deliberate attempts to hamper the defense or justified circumstances.  Crowder v. State, 812 S.W.2d 63, 66
(Tex. App.BHouston [14th
Dist.] 1991, pet. ref'd).  Here, the
preindictment delay was due to justified circumstances; i.e., a thorough
investigation.  Nothing in the record
shows the State caused the post-indictment delay of approximately five and
one-half months.  Instead, it appears
that the delay arose from a neutral event such as a crowded court docket.  Accordingly, the seventeen and one-half month
delay was not due to a Adeliberate
attempt to delay the trial.@  We conclude that the delay should not be weighed
against the State.








                              C. Assertion of the Right

A defendant's assertion of his speedy-trial right is entitled
to strong evidentiary weight in determining deprivation of that right.  Floyd v. State, 959 S.W.2d 706, 710
(Tex. App.BFort Worth
1998, no pet.).  Although a motion to
dismiss notifies the State and the court of the speedy-trial claim, a
defendant's motivation in asking for dismissal rather than a prompt trial is
clearly relevant, and may sometimes attenuate the strength of his claim.  Phillips v. State,
650 S.W.2d 396, 401 (Tex. Crim. App. 1983).  This is not to say, however, that asking only
for dismissal will result in a waiver, while seeking a speedy trial and, in the
alternative, a dismissal, would preserve the claim.  Id. 
Each case must turn on its own facts, and the particular relief an
accused seeks is but one fact to consider. 
Id.

Here, on April 12, 2001, eleven days before the trial setting,
defense counsel filed a motion for continuance, asserting that she Ahas various
investigative leads to pursue. . . .@  Counsel filed the motion to dismiss for
non-speedy trial on April 23, 2001. 
Based upon the record before us, it is fair to say Williams=s goal was not
to gain a speedy trial, but was an attempt to have the charge against him
dismissed.    

                                     D. Prejudice to the Accused








In Barker, the Court identified three purposes behind
the speedy-trial right:  "(i) to
prevent oppressive pretrial incarceration;  (ii) to minimize anxiety and concern
of the accused;  and (iii) to limit the
possibility that the defense will be impaired."  Id. at 532-33.   In considering the factor of prejudice,
moreover, the court of criminal appeals does not require proof of "actual
prejudice," but only "some showing" that the delay has been
prejudicial.  Munoz, 991 S.W.2d at 826; Phillips, 650 S.W.2d at 401.  Of these subfactors "the most serious is
the last, because the inability of a defendant adequately to prepare his case
skews the fairness of the entire system." 
Munoz, 991 S.W.2d at 826 (quoting Barker, 407 U.S. at
532-33).

When a defendant makes a "prima facie showing of
prejudice," the State carries "'the obligation of proving that the
accused suffered no serious prejudice beyond that which ensued from the
ordinary and inevitable delay.'"  Munoz,
991 S.W.2d at 826 (quoting Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex.
Crim. App. 1973)).

                              1. Oppressive Pretrial Incarceration 

Two days after the alleged offense, TDCJ put Williams in administrative  segregation.  Due to an alleged incident with an inmate,
TDCJ sent him to high security at the Estelle Unit.  There, his recreation and commissary
privileges were very limited.  Williams=s testimony was
that since the indictment he has experienced additional restrictions such as ATotal
confinement to cell with no windows, hardly any sound, pretty much essential
deprivation.@  He also said that he had ANo radio, no
newspaper.  We are not allowed to have
hygiene at certain levels, our food reduced at certain levels.@  These restrictions caused him mental distress
and affected his ability to sleep.  He
claimed that but for the indictment he would be in Ageneral
population.@  We conclude that he suffered some oppressive
pretrial incarceration.[4]








                                         2. Anxiety and Concern

Considering the severity of the charge, a
certain amount of anxiety while awaiting trial is to be expected.  See Thompson v. State, 983 S.W.2d 780,
785 (Tex. App.BEl Paso 1998,
pet. ref=d).  However, it was not until after November 7,
2000 that Williams's anxiety could have begun, because before then he was not
under indictment.  See Phillips, 650 S.W.2d at 401. 
There was only a five and one-half month delay between the indictment
and the trial setting, and therefore, prejudice, if any, was minimal.

                                         3. Impairment of Defense

Williams argues that AAt least one
defense witness became unavailable due to the delay.@  He does not mention the witness by name, but
he is apparently referring to Jason Wimberly, who was one of forty-four
witnesses to the alleged offense. 
Williams does not argue how Wimberly=s testimony keeps him from adequately
preparing his case.  Although counsel
told the trial court that Wimberly would testify that he committed the offense,
this is somewhat speculative because counsel did not state how she knew the
context of his testimony.  Further, we
must consider this in light of Williams=s testimony
that he has a list of the forty-four witnesses, has talked to some of them, and
if necessary they can testify on his behalf. 









                                 E. Balancing the Barker Factors

The delay was presumptively prejudicial,
but not excessive. Williams has not shown that the delay has impaired his
defense to the extent that he cannot adequately prepare his case.  Though he was under some anxiety while
waiting for his trial, this is insufficient to cause the prejudice prong to
weigh in his favor.  Nothing in the
record shows that the State deliberately delayed his trial.  Further the prejudice suffered by Williams
was minimal, and he suffered no serious prejudice beyond that which ensued from
the ordinary and inevitable delay.  We
hold that Williams was not denied a speedy trial.  See Munoz, 991 S.W.2d at 822
(seventeen and one-half month delay did not violate speedy-trial rights).  We overrule the point of error.

                                                 IV. Conclusion

We AFFIRM that part of the trial court=s order which
denies dismissal for non-speedy trial. 
We REVERSE that part of the order which dismisses the case for
preindictment delay and REMAND the case to the trial court.

 

 

 

______________________________

J.
BONNER DORSEY,

Justice

 

Publish.

Tex.
R. App. P. 47.3(b).

 

Opinion delivered and
filed

this 24th day of October,
2002.                   

 











[1]This
statute provides:

 

When
a defendant has been detained in custody or held to bail for his appearance to
answer any criminal accusation before the district court, the prosecution,
unless otherwise ordered by the court, for good cause shown, supported by
affidavit, shall be dismissed and the bail discharged, if indictment or
information be not presented against such defendant on or before the last day
of the next term of the court which is held after his commitment or admission
to bail or on or before the 180th day after the date of commitment or admission
to bail, whichever date is later.

 

Tex. Code
Crim. Proc Ann. art. 32.01 (Vernon Supp. 2002).





[2]The Moore
court said that:  AIt is
extraordinarily difficult to show prejudice arising from a delay in an
indictment that falls within the applicable statute of limitations period.@  Moore, 943 S.W.2d at 128 (citing United
States v. Martinez, 77 F.3d 332, 335‑37 (9th Cir. 1996)).





[3]In Lovasco,
a seventeen-month delay occurred between the time that
the prosecutors received the information upon which they ultimately indicted
the accused and the time that he was actually indicted.  The prosecutors argued that the delay
occurred because they thought the crime may have involved other people.  The Supreme Court stated the Due Process
Clause does not permit courts to Aabort criminal prosecutions
simply because they disagree with a prosecutor's judgment as to when to seek an
indictment.  [P]rosecutors are under no
duty to file charges as soon as probable cause exists but before they are
satisfied they will be able to establish the suspect's guilt beyond a
reasonable doubt.@  Lovasco, 431 U.S. at 790‑791.

 





[4]Although
Williams=s incarceration was
oppressive we cannot say the State was responsible for this incarceration. On
cross-examination, the State=s attorney asked him, ABut
in reality you didn=t get
back in general population because you had already been classified as a member
of a disruptive group and transferred off of the facility where you were; is
that correct?@  Williams answered affirmatively.